UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **DEREK MORTLAND**, | ) |
| Plaintiff, | ) Case No. 2:24-cv-10679 |
| v. | ) |
| **SOUTHGATE HOSPITALITY GROUP, LLC,** a Michigan limited liability company, | ) Judge: |
| Defendant. | ) |

## COMPLAINT FOR EQUITABLE RELIEF

Plaintiff, DEREK MORTLAND, individually, by and through the undersigned counsel, Owen B. Dunn, Jr., Counsel for Plaintiff, hereby files this Complaint against Defendant Southgate Hospitality Group, LLC**,** a Michigan limited liability company, for injunctive relief, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging as follows:

## JURISDICTION AND VENUE

1. This action is brought by the Plaintiff, Derek Mortland, individually, and on behalf of individuals similarly situated, pursuant to the enforcement provision of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §

1

12188(a), against the Defendant as delineated herein.

2. The Court has jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, which governs actions that arise from the Defendant's violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; 28 U.S.C. § 1331, which gives the District Courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; 28 U.S.C. § 1343(3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government, and 28 U.S.C. § 1367, as Count II utilizes the same core of operative facts as Count I, and is therefore subject to supplemental jurisdiction.

3. Venue is proper in the Eastern District of Michigan as venue lies in the judicial district of the property *situs*. The Defendant's property and operations complained of by Plaintiff are located in this judicial district, where the business of public accommodation is conducted, including the acts complained of herein.

## PARTIES

4. Plaintiff, DEREK MORTLAND ("Plaintiff") is an Ohio resident, is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

5. Defendant **Southgate Hospitality Group, LLC** operates and owns a

2

    Hampton Inn Detroit/Southgate located at 13555 Prechter Boulevard, Southgate, Michigan 48195 in Wayne County. Plaintiff has patronized Defendant's hotel and business previously as a place of public accommodation.

6. Upon information and belief, the facilities owned by Southgate Hospitality Group, LLC, are non-compliant with the remedial provisions of the ADA. As Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, Defendant is responsible for complying with the obligations of the ADA. Defendant's facilities as a hotel and place of public accommodation fail to comply with the ADA and its regulations, as also described further herein.

7. Upon information and belief, the hotel owned and operated by the Defendant was originally built by the Defendant or its predecessor commencing in 2013 and granted permits for occupancy in 2013 and is non-compliant with the remedial provisions of the ADA for newly designed and constructed or altered facilities. Full compliance with the implementing regulations of the ADA is required for this hotel unless it is structurally impracticable in which case compliance is required to the extent that it is not structurally impracticable.

8. Plaintiff is paralyzed as a result of a spinal cord injury and permanently uses

a wheelchair for mobility. As such, he is substantially limited in performing one or more major life activities, including but not limited to, standing and walking, as defined by the ADA and its regulations thereto.  Plaintiff has visited the property that forms the basis of this lawsuit as an overnight hotel guest and plans to return to the property to avail himself of the goods and services offered to the public at the property.

9. Mr. Mortland is employed as an ADA speaker, consultant, expert, and ADA coordinator, with one aspect of his expertise focusing on inspection of places of public accommodation for ADA compliance and in that capacity has consulted for private clients in throughout Michigan. He travels to Eastern and Southeast Michigan many times annually for business.  This overnight stay at Defendant's hotel being one of those occasions.

10. During the Plaintiff's stay, and most recently on the night of January 21, 2024, Plaintiff encountered architectural barriers at the subject property that violate the ADA and its regulations.  The barriers to access at the property have endangered Plaintiff's safety.

11. Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting

as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.

12. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained in this complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of

the ADA by the Defendant. Plaintiff desires to visit the Defendant's place of business again on future occasions, not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the hotel and its amenities without fear of discrimination.

13. The Defendant has discriminated against the individual Plaintiff by denying him access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq.*

14. The Defendant has discriminated and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

15. A preliminary inspection of Hampton Inn Detroit/Southgate, including its facilities, has shown that many violations of the ADA exist. These violations include, but are not limited to:

Type and Number of Designated Accessible Guestrooms

A. Upon information and belief, the Hampton Inn Detroit/Southgate has a legally insufficient total number of hotel guestrooms fitted with mobility accessible features. Whereas, for a property with 114 guestrooms, there must

be a minimum of 5 mobility accessible guestrooms without a roll-in shower and a minimum of 2 of mobility accessible guestrooms with a roll-in shower, totaling 7 designated mobility accessible guestrooms.

Designated Mobility Accessible Guestrooms Generally

B.  Upon information and belief, as well as of review of published photos by hotel management, Derek Mortland believes substantially similar barriers to handicap access for the mobility impaired exist in all guestrooms that are designated as mobility accessible guestrooms throughout the hotel similar to those experienced by the Plaintiff in guestroom number 312 which require remedying.

C.  The hotel's designated accessible guestrooms are not disbursed among the various classes of guestrooms, whereas the property offers double queen, standard king, King with whirlpool, rooms with sofa beds, etc.  However, guests who require mobility accessible accommodations do not have access to reserve and stay at the full range of room classes. This is in violation of the ADA and its remedy is strictly required or at minimum is readily achievable.

Designated Mobility Accessible Guestroom #312

D.  The guestroom entry door operating hardware (door latch) exceeds the maximum height requirements, in violation of the ADA and Section 404.2.7 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

E.  The guestroom entry door requires more than five pounds of pressure to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards, and Section 4.13.11(2) of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

F.  The closet door contains projections into the doorway below 34 inches, in violation of the ADA and Section 404.2.3 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

G.  The closet rod is in excess of allowable height for either a side or front approach, in violation of the ADA and Section 308.2.1 and 308.3.1 of the

       2010, whose remedy is strictly required or, at minimum, readily achievable.

- H. The closet shelf is located above allowable reach range and does not have required clear floor space for an approach, in violation of the ADA and Section 308.2.1 and 308.3.1 of the 2010 Standards, whose remedy is strictly required or, at a minimum, is readily achievable.

- I. The clear floor space at the closet only allows for a forward approach and the iron is out of reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards and Section 4.2.5 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

- J. The room lamp lacks required clear floor space for an approach, in violation of the ADA and Section 305.3 of the 2010 Standards and Section 4.2.4.1 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

- K. The mirror above the lavatory is located in excess of allowable height from the finish floor to the reflective surface, in violation of the ADA and Section 603.3 of the 2010 Standards and Section 4.19.6 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

- L. The water and drainpipes under the lavatory are not adequately insulated or otherwise configured to protect against scalding or contact in violation of the ADA and Section 606.5 of the 2010 Standard and 4.19.4 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

- M. The guest bathroom shelving above the toilet lacks required clear floor space for an approach, in violation of the ADA and Section 305.3 of the 2010 Standards and 4.21.5 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

- N. The guest bathroom shelving above the toilet is out of the maximum allowable reach for a side approach, in violation of the ADA and Section 308.3.1 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

- O. The shower stall is not a minimum of 60 inches deep, in violation of the ADA

      and Section 608.2.2 of the 2010 Standards and Section 4.21.2 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

P.     The threshold for the shower exceeds the maximum height requirement, in violation of the ADA and Section 608.7 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

Q.     The roll-in shower entirely lacks a horizontal side wall grab bar on the control wall, in violation of the ADA and Section 608.3.2 of the 2010, whose remedy is strictly required or, at minimum, is readily achievable.

R.     The grab bar's use is obstructed in violation of the ADA and Section 609.3 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

S.     Grab bars should not be located directly above the seat, in violation of the ADA and Section 608.3.2 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

T.     Roll-in shower faucet controls are not located on the back wall adjacent to the seat a maximum of 27 inches from the seat wall and the controls, faucets, and shower spray unit shall are located higher than 48 inches above the shower floor, in violation of the ADA and Section 608.5.2 of the 2010 Standards and 4.21.5 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

U.     The shower hand held sprayer unit hose is not a minimum of 59 inches long, in violation of the ADA and Section 608.6 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

V.     The shower hand held sprayer unit is not equipped with a non-positive on/off control, in violation of the ADA and Section 608.6 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

W.     The clearance in front of the shower is not compliant because it has a slope greater than 2% and width of only 56 inches, in violation of the ADA and Section 608.2.2.1 of the 2010 Standards and Section 4.21.2 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily

achievable.

X. The toilet paper dispenser is not mounted in the required location, in violation of the ADA and Section 604.7 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

Breakfast Area

Y. Dining surfaces lack required knee and toe clearance at the pedestal tables, in violation of the ADA and Section 306.2.1 of the 2010 Standards and Section 4.32.3 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

Z. As all tables are non-compliant, there are no accessible dining surfaces, in violation of the ADA and Section 226.1 of the 2010 Standards and 5.1 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

AA. There are amenities, including cups, a juice dispenser, waffle iron, batter cups, straws, napkins and oatmeal outside of allowable reach range, in violation of the ADA and Section 308.3.2 of the 2010 Standards and Section 4.2.6 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

Fitness Room

BB. There is not at least 30 inches of clear floor space to approach the fitness equipment in violation of the ADA and Section 305.3 of the 2010 Standards and Section 4.2.4.1 of the 1991 Standards, whose remedy is strictly required or, at minimum, readily achievable.

CC. There is not at least 36 inches of maneuvering clearance between fitness equipment, in violation of the ADA and Section 403.5.1 of the 2010 Standards and Section 4.3.3 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

Pool Restroom

DD. The mirror above the sink is mounted greater than 40 inches above the finish floor to the reflective surface, in violation of the ADA and Section 603.3 of

      the 2010 Standards, and Section 4.19.6 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

EE.    The paper towel dispenser, soap dispenser, and other amenities are located above allowable reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

FF.    The pool restroom door requires more than five pounds of pressure to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards, and Section 4.13.11(2) of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

GG.    The water and drainpipes under the lavatory are not adequately insulated or otherwise configured to protect against contact or scalding in violation of the ADA and Section 606.5 of the 2010 Standard and 4.19.4 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

<u>Pool Area</u>

HH. The pool has no accessible means of entry, in violation of the ADA and Section 242.2 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

II.  At the time of the Plaintiff's overnight stay at the Defendant's hotel the lift had no power and could not be operated. The lift should be accessible and available at all times the pool is open for use, in violation of the ADA and Section 242.2 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

JJ.  The pool lift cannot be operated unassisted because the only operative controls are on the lift mechanism and they cannot be operated from the seat or from the water, in violation of the ADA and Section 1009.2.7 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

KK. The spa has no accessible means of entry, in violation of the ADA and Section 242.4 of the 2010 Standards, whose remedy is strictly required, or at minimum, readily achievable. The spa does contain a mechanism to assist persons with

disabilities in gaining entry into the spa and exiting, but it was completely inoperable at the time of Plaintiff's overnight stay at the Defendant's hotel.

LL. The pool shower is non-compliant. The valve requires tight grasping and twisting of the wrist and must be mounted centered at 39-41inches, there must be a flexible hand-held sprayer unit with a hose at least 59 inches long that can be used both as a fixed shower head and as a hand-held shower. The shower spray unit shall have an on/off control with a non-positive shutoff. This unit must be mounted such that the top of the mounting bracket is at a maximum height of 48 inches above the floor, in violation of the ADA and Section 608.6 of the 2010 Standards, whose remedy is strictly required, or at a minimum, readily achievable.

Unisex Public Restroom – Left

LL. The restroom door requires more than five pounds of pressure to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards, and Section 4.13.11(2) of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

MM. The water and drainpipes under the lavatory are not adequately insulated, in violation of the ADA and Section 606.5 of the 2010 Standard and 4.19.4 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

NN. The storage cabinet is located above allowable reach, in violation of the ADA and Sections 308.2.1 and 308.3.1 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

OO. The rear grab bar is obstructed by the large storage cabinet, in violation of the ADA and Section 609.3 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

PP. The mirror is mounted greater than 40 inches above the finish floor to the reflective surface, in violation of the ADA and Section 603.3 of the 2010 Standards, and Section 4.19.6 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

Unisex Public Restroom – Right

QQ. The restroom door requires more than five pounds of pressure to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards, and Section 4.13.11(2) of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

RR. The water and drainpipes under the lavatory are not adequately insulated, in violation of the ADA and Section 606.5 of the 2010 Standard and 4.19.4 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

SS. The storage cabinet is located above allowable reach, in violation of the ADA and Sections 308.2.1 and 308.3.1 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

TT. The rear grab bar is obstructed by the large storage cabinet, in violation of the ADA and Section 609.3 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

UU. The mirror is mounted greater than 40 inches above the finish floor to the reflective surface, in violation of the ADA and Section 603.3 of the 2010 Standards, and Section 4.19.6 of the 1991 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

Policies and Procedures

VV. The Defendant lacks or has inadequate defined policies and procedures for the assistance of disabled patrons, including a policy for maintaining its accessible features, in violation of the ADA whose remedy is strictly required or, at minimum, is readily achievable.

WW. The Defendant's inadequate procedures for the benefit of its patrons with disability extend to its failure to conduct a self-survey of its facilities and amenities that has resulted in discriminatory conduct toward Derek Mortland.

XX. The Defendant's inadequate policies and procedures include an absence of emergency evacuation plans of this hotel for the Defendant's guests with varying types of disabilities who may require an added duty of care and pre-planning. As such, guests with mobility impairments including Mark Fultz,

struggle to address the existing barriers to accessibility on the property and suffer additional risk in the event of an emergency and proper emergency evacuation plans are required.

16. The discriminatory violations described in Paragraph 15 by Defendant **Southgate Hospitality Group, LLC** are not an exclusive list of the Defendant's ADA violations. Plaintiff requires further inspection of the Defendant's place of public accommodation and facilities in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The Plaintiff has been denied access to Defendant's accommodations; benefit of services; activities; and has otherwise been discriminated against and damaged by the Defendant, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation, facilities and operations in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITES ACT

17.   Plaintiff restates the allegations of ¶¶1-16 as if fully rewritten here.

18. The hotel at issue, as owned and operated by **Southgate Hospitality Group, LLC** constitutes a public accommodation and service establishment, and as such, must be, but is not, in compliance with the Americans with Disabilities Act ("ADA") or Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

19. Plaintiff was unlawfully denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of the property on the basis of disability due to Defendant's failure to comply with Title III of the Americans with Disabilities Act and its accompanying regulations, as prohibited by 42 U.S.C. § 12182, *et seq.* Defendant will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the facility, including those specifically set forth herein, and make the facility accessible to and usable by persons with disabilities, including Plaintiff.

20. The Plaintiff, and others similarly situated, is presently without adequate remedy at law and is damaged by irreparable harm. Plaintiff reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Facility, including those set forth herein.

21. Pursuant to 42 U.S.C. §12187, Plaintiff requests that the Court issue an

injunction requiring Defendant to come into full compliance with the implementing regulations of the ADA as is required for this hotel unless it would be structurally impracticable or at minimum to make such readily achievable alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages on its property to disabled persons. In connection with that relief, Plaintiff requests reasonable attorney's fees and costs of maintaining this action.

## COUNT II
## VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
## M.C.L. § 37.1301 *et seq.*

22. Plaintiff restates the allegations of ¶¶1-21 as if fully rewritten here.

23. **Southgate Hospitality Group, LLC** owns or operates a "place[s] of public accommodation" pursuant to M.C.L §37.1301(a).

24. Defendant committed unlawful acts pursuant to M.C.L §37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges. Whereas, the Defendant has denied Mr. Mortland and others with mobility impairments compliant transient lodging despite the property being granted first occupancy after the enactment of the Americans with Disabilities Act and furthermore has renovated without undertaking required, or at minimum, readily achievable barrier removal.

25. Pursuant to M.C.L §37.1606, Plaintiff is entitled to compensatory and exemplary damages, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

**WHEREFORE**, Plaintiff demands,

For **COUNT I**, an injunction requiring Defendant to come into full compliance with the implementing regulations of the ADA as is required for this hotel unless it would be structurally impracticable or at minimum to make such readily achievable alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons, and the reasonable attorneys' fees and costs of maintaining this action; and,

For **COUNT II**, compensatory and exemplary damages, attorney's fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons.

Respectfully Submitted,

*Counsel for Plaintiff:*

/s/ Owen B Dunn Jr.
Owen B. Dunn, Jr., Esq. (p66315)
Law Offices of Owen Dunn, Jr.
The Offices of Unit C
6800 W. Central Ave., Suite C-1
Toledo, OH 43617
(419) 241-9661 – Phone
(419) 241-9737 – Facsimile
Monroe, MI (734) 240-0848
dunnlawoffice@sbcglobal.net